1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10   MORGAN WELLS,                    )   Case No. CV 04-3546-PJW
                                      )
11                   Plaintiff,       )
                                      )   MEMORANDUM OPINION AND ORDER
12            v.                      )
                                      )
13   JO ANNE B. BARNHART,             )
     COMMISSIONER OF THE              )
14   SOCIAL SECURITY ADMINISTRATION,  )
                                      )
15                   Defendant.       )
     _____)

16

17                                  I.

                                INTRODUCTION

18

19        Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and

20   1383(c)(3), seeking reversal of the decision by Defendant Social

     Security Administration ("Agency") denying Disability Insurance

21   Benefits ("DIB").  Alternatively, he asks the Court to remand the case

22   to the Agency for further proceedings.  He claims that the Agency

23   erred when it determined at step two that he did not have a severe

24   cognitive impairment.  For the reasons discussed below, the Agency's

25   decision is affirmed and the case is dismissed with prejudice.

26

27

28

II.

BACKGROUND

   In December 2001, Plaintiff filed an application for DIB, alleging that he was unable to work because he had a "nervous condition, hear[s] voices, talk[s] to [himself], [was] unable to comprehend, [and] experienced black out[s] [and] headaches." ("Administrative Record ("AR") 64.)   His claim was denied initially. He then applied for and was granted a hearing before an Administrative Law Judge ("ALJ").

   On March 28, 2003, he appeared with counsel and testified at the administrative hearing.   (AR 177-227.)   In July 2003, the ALJ issued a decision denying his claim for benefits, finding at step two of the sequential evaluation process that Plaintiff did not suffer from a severe impairment.   (AR 21.)   Plaintiff appealed the ALJ's decision to the Appeals Council, which affirmed the ALJ's decision.   (AR 5-8.) Plaintiff then filed this action seeking to overturn the Agency's decision denying his claim for benefits.

III.

ANALYSIS

A.   Standard of Review

   "Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).   The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported

2

by substantial evidence or is based on legal error.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).)  It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Indeed, if the record evidence can reasonably support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the ALJ committed error but the error was harmless, reversal is not required.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)(applying the harmless error standard).

B.  <u>The ALJ's Finding That Plaintiff Did Not Suffer From A Severe Impairment Is Supported By Substantial Evidence</u>

Plaintiff contends that the ALJ erred in denying his claim at step two based on his finding that Plaintiff did not suffer from a severe impairment.  Plaintiff argues that his treating doctor's records establish that he suffers from a moderate limitation in cognitive ability--which by definition has more than a minimal impact on his ability to work--and, therefore, Plaintiff should have survived

3

1  step two of the analysis.  For the following reasons, the Court
2  disagrees.

3      Under 20 C.F.R. § 416.921, a "non-severe impairment" is one that
4  does not significantly limit a person's physical or mental capacity to
5  perform basic work-related functions.[1]  The determination that an
6  impairment is "non-severe" is "'a de minimis screening device to
7  dispose of groundless claims.'"  *Edlund v. Massanari*, 253 F.3d 1152,
8  1158 (9th Cir. 2001)(quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th
9  Cir. 1996)).  Such a finding is only appropriate when the "medical
10  evidence establishes only a slight abnormality . . . which would have
11  no more than a minimal effect on an individual's ability to work
12  . . . . "  SSR 85-28; *see also Bowen v. Yuckert*, 482 U.S. 137, 154
13  (1987).

14      The ALJ rejected the treating psychiatrist's opinion because: 1)
15  it was not supported by objective evidence and, instead, was based on
16  Plaintiff's subjective complaints, which were not credible, 2)
17  Plaintiff did not seek treatment from this doctor until after he had
18  filed a claim for benefits and the claim had been denied, and 3)
19  Plaintiff's daily activities suggested a higher level of functioning.
20  (AR 19.)  As set forth below, the ALJ's finding that Plaintiff did not
21  suffer from a severe impairment is supported by substantial evidence
22  in this record.

23      Plaintiff has not challenged the ALJ's credibility finding and it
24  is the law of this case.  Where, as here, a treating psychiatrist's

25

26      [1]  Mental capacity includes the ability to understand, remember,
27  and carry out simple instructions; use judgment; respond appropriately
   to supervisors, co-workers and usual work situations; and deal with
28  changes in a routine work-setting.

4

opinion is based on the claimant's subjective complaints and the ALJ
concludes that the claimant is not credible, the ALJ can reject the
treating physician's opinion on that basis.  *See, e.g., Andrews v.
Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995)(holding that where the
treating physician's opinion of disability is based primarily on the
claimant's own account of his symptoms and the claimant has been found
to be not credible, the ALJ is free to disregard the opinion).

Additionally, the ALJ found that the treating psychiatrist's
opinion was not based on any objective evidence.  Plaintiff disagrees.
He contends that his treating psychiatrist tested him and the test
revealed that Plaintiff was moderately impaired.  (AR 134.)  The
record does not support this claim.  The record establishes that
Plaintiff's doctor did administer a test to Plaintiff--the Mini-Mental
State Examination ("MMSE")--but it did not prove that Plaintiff was
moderately impaired.

The MMSE tests cognitive impairment.  It consists of 11
questions, each worth from one to five points.  A perfect score would
be a 30.  (AR 134.)  Included on the test form is the scoring scale.
(AR 134.)  A score of 21 (or more) out of 30, *i.e.,* a minimum of 70%,
signifies "mild" cognitive impairment.  (AR 134.)

When the test was administered to Plaintiff, he was only asked
eight of the 11 questions, most probably because the other three
required reading and writing, which Plaintiff claims he cannot do.
(AR 134.)  Thus, the maximum possible score Plaintiff could have
obtained on the eight questions posed to him was a 23.  In fact,
Plaintiff scored 16.  This score amounts to a 70%.  Based on the scale
contained on the test sheet, Plaintiff's cognitive impairment would
only be mild.

1    Plaintiff claims that the test results support his contention
2  that he is moderately impaired.  To arrive at this conclusion, he has
3  inserted his raw score of 16 into the scoring table on the test sheet
4  and claims it supports a finding of moderately impaired.  (The table
5  provides that a raw score of 10-20 indicates moderate impairment.)
6  There is no support for this conclusion.  Plaintiff's raw score of 16
7  should not be inserted into the scoring table because Plaintiff was
8  not asked all the questions on the test.  Even Plaintiff's own doctor
9  noted on the form that Plaintiff's score was 16 out of 23, signaling
10 that the standard scoring criteria should not be applied to
11 Plaintiff's test results.  Based on the scale contained on this test
12 sheet, Plaintiff's score of 70% indicated only mild impairment.  Thus,
13 not only does this test not support Plaintiff's claim that there is
14 objective medical evidence that he was moderately impaired, it
15 directly contradicts his claim.  This test, performed by his own
16 doctor, indicates that he is only mildly impaired.

17    The ALJ also noted that Plaintiff had not gone to see his
18 treating psychiatrist until after he had applied for benefits, been
19 denied, and requested a hearing before the ALJ.  This chronology
20 suggested to the ALJ that Plaintiff's treatment was suspect.
21 Certainly, the ALJ in this case was not the first to question a
22 claimant's motives in these circumstances and it was not an improper
23 reason for scrutinizing his treating doctor's opinion.  *See, e.g.,*
24 *White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001)(affirming ALJ's
25 decision discounting treating physician's opinion because doctor was
26 consulted only after the claimant applied for social security
27 benefits).

28

6

1    Finally, the ALJ discounted the treating psychiatrist's opinion
2  of impairment because it was inconsistent with Plaintiff's daily
3  activities.   This, too, is a legitimate reason for rejecting a
4  treating physician's opinion, *see Magallanes*, 881 F.2d at 51-52
5  (upholding ALJ's rejection of treating physician's opinion because it
6  was inconsistent with other evidence in record), and is supported by
7  substantial evidence in this record.   The ALJ pointed out that
8  Plaintiff lived alone, did his own chores, and collected cans two days
9  a week and recycled them for cash.[2]   (AR 19.)   The Court notes that
10 the record is replete with further evidence that Plaintiff's cognitive
11 impairment did not preclude him from working.
12    First, Plaintiff worked continuously for an eight-year period
13 from 1987 to 1995, despite any cognitive difficulties he may have.
14 (AR 65.)   Plaintiff held down numerous jobs for extended periods of
15 time during this period.   (AR 65.)   He worked at McDonald's for eight
16 months.   (AR 197.)   He worked at Fatburger for seven or eight months.
17 (AR 195.)   He bagged groceries at a grocery store for five months.
18 (AR 198.)   He cleaned airplanes at the airport for more than a year.
19 (AR 198.)   He also worked for the company that supplies the rental
20 luggage carts at the airport, collecting them at the curb when
21 passengers left them behind.   (AR 199.)   Plaintiff did not leave these
22 jobs because he could not handle them; he left them because he wanted
23 to pursue better, higher paying jobs.   (AR 198.)   He explained to the
24 ALJ that he continued to change jobs because he was "moving . . . up,

25

26    [2]  The Court notes that the ALJ determined that Plaintiff's
   ability to collect cans and recycle them was evidence that Plaintiff
27 was working between 1995 and 2003.  The Court does not necessarily
   agree with this finding.  Collecting cans two times a week is not the
28 same as working.

1    as far as working, and I wanted better pay." (AR 198.)  Though
2    Plaintiff reported that he had not worked since 1995, there is nothing
3    in this record to suggest that Plaintiff's cognitive functioning
4    deteriorated after 1995.  Rather, it appears that he simply stopped
5    working.[3]

6         In addition to the jobs Plaintiff held that suggest he could
7    work, Plaintiff testified that he passed the California driver's
8    license test and obtained a license.  (AR 189.)  Plaintiff also took
9    and passed an auto mechanics certification class.  (AR 187.)  Though
10   the class was designed as a one-year curriculum, Plaintiff passed it
11   in 11 months.  (AR 187.)

12        Further evidence that Plaintiff was not impaired can be found in
13   the administrative record.  Plaintiff was examined, tested, and
14   evaluated by psychologist Harrell Reznick, in conjunction with his
15   application in this case.  (AR 106-11.)  Dr. Reznick concluded that
16   Plaintiff was intentionally performing poorly on the tests in order to
17   appear more impaired than he actually was.  (AR 110.)  Though
18   Plaintiff tested with an I.Q. of 57, Dr. Reznick estimated that his
19   I.Q. was 80.  (AR 110.)  Dr. Reznick concluded that Plaintiff's
20   cognitive impairment would not prevent him from working.  (AR 110.)  A
21   consulting psychiatrist who reviewed the medical records similarly
22   concluded that Plaintiff had no cognitive impairments limiting his
23   ability to work.  (AR 112-26.)  Though Plaintiff claimed at the
24   administrative hearing that he had been in special education classes

25

26        [3] Plaintiff reported that he fell off the roof of a house in
     high school, which was before he started working in 1987.  (AR 188.)
27   He also testified that he fell to the ground from the wing of an
     airplane he was working on in 1994, but returned to work a month later
28   and continued to work.  (AR 200, 214.)

while in school, he never introduced any evidence of that, despite the ALJ's request to his counsel that he do so.  (AR 207.)  The ALJ interpreted Plaintiff's failure to submit the school records as evidence that they did not exist, which is not unreasonable in the context of this case.  Thus, there was very little if any evidence in this record demonstrating that Plaintiff's cognitive impairment affected his ability to work.

Plaintiff also claims that the ALJ ignored his treating doctor's other conclusions: For example, his doctor's finding that he suffered from post-traumatic stress disorder and other psychological problems that would have impacted his ability to work.  Again, the Court disagrees.  These diagnoses were dependent on Plaintiff's reports to his doctor.  Clearly, his doctor's findings, which were based on Plaintiff's own statements, should not have been accepted at face value.  *See Andrews*, 53 F.3d at 1040.  This is particularly true where Plaintiff's whole purpose in going to the Clinic appears to be to gain evidence to use in this social security case.[4]

In the end, however, the most compelling reason to affirm the ALJ's conclusion that Plaintiff's cognitive impairment did not have more than a minimal effect on his ability to work is the fact that Plaintiff has been able to obtain and hold jobs for a good portion of his adult life.  As Plaintiff set forth in his application form, and

---

[4]  The record is replete with evidence that Plaintiff was not telling the truth throughout this process.  He claimed at the 2003 administrative hearing that he quit drinking in 1994 or 1995. (AR 208.)  He told his doctor at the Clinic that he quit drinking in 2002. (AR 155.)  In February 2003, when he arrived at the Clinic for an appointment, his doctor smelled alcohol on his breath.  (AR 132.) Plaintiff explained to the ALJ that it was Listerene, not alcohol. (AR 209.)

as he explained in his testimony, he has had numerous jobs over the years.  His cognitive abilities never interfered with his performance of these jobs, almost all of which he quit to go to a better job.  (AR 77, 195-99.)  All in all, Plaintiff worked almost continuously for an eight-year period.  (AR 77.)  This work record, coupled with a complete void of any medical records from 1995 to 2003, substantiate the ALJ's findings.  Nothing in this record suggests that Plaintiff's cognitive ability then or now had any effect on his ability to work. For all these reasons, the Agency's decision denying his claim at step two is affirmed.

        IT IS SO ORDERED.


        DATED:     August __8___, 2005.


                                        _____/s/_____
                                        PATRICK J. WALSH
                                        UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\WELLS, M\Memo_Opinion.wpd